IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF
NORTH CAROLINA

| | |
|---|---|
| **RAYMUNDO OSCAR ALVA MALDONADO** ) | |
| ) | |
| **Petitioner,** ) | **Case No.:** 24-CV-920 |
| ) | |
| **v.** ) | |
| ) | |
| **OLIVA MAGDALENA GONZALEZ** ) | |
| ) | |
| **Respondent.** ) | |

---

## VERIFIED PETITION UNDER HAGUE CONVENTION SEEKING RETURN OF CHILD TO PETITIONER, IMMEDIATE ISSUANCE OF SHOW CAUSE ORDER TO RESPONDENT, AND HEARING ON MERITS

The Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980; International Child Abduction Remedies Act, 22 U.S.C. 9001 *et seq.*

### INTRODUCTION

This Petition (the "Petition" or "Hague Petition") is brought by Raymundo Oscar Alva Maldonado ("Petitioner"), a citizen of Mexico, to secure the return of his five-year-old son, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (the "Child" or R.A.G.), who was wrongfully removed to the United States without Petitioner's consent or acquiescence from his home in Mexico. R.A.G. was removed by Oliva Magdalena Gonzalez ("Respondent") and wrongfully retained in the United States by Respondent. Petitioner and Respondent's then eighteen-year-old son Jerko Rey Yoltic Alva Gonzalez, also accompanied Respondent and R.A.G to the United States.

This Petition is filed pursuant to the Convention on the Civil Aspects of

1

International Child Abduction, done at the Hague on October 25, 1980[1] (the "Hague Convention" or "Convention"), and the International Child Abduction Remedies Act[2] ("ICARA"). The Convention came into effect in the United States of America on July 1, 1988, and has been ratified between, among other Contracting states, the United States of America and Mexico in 1991. *See* Exhibit 1.

The goals of the Hague Convention are as follows: (1) to secure the immediate return of a Child wrongfully removed or wrongfully retained in any Contracting State; and (2) to ensure that rights of custody and access under the law of one Contracting State are effectively respected in other Contracting States. Convention, art. 1.[3]

## JURISDICTION AND VENUE

This Court has jurisdiction over this action pursuant to 22 U.S.C. § 9003(a) (2000).[4] Furthermore, this Court has federal question jurisdiction over this action because it

---

[1] T.I.A.S No. 11,670, at 1, 22514 UN.T.S. at 98, *reprinted in* 51 Fed. Reg. 10493 (1986).

[2] 42 U.S.C. § 11601 *et. seq.* (2000). ICARA was created to deal with the sudden abduction of Children and to allow a petitioner to assert his or her rights in exigent circumstances. *See Distler v. Distler*, 26 F. Supp. 2d 723, 727 (D. N.J. 1998).

[3] The Hague Convention authorizes a federal district court to determine the merits of the abduction claim but does not allow it to consider the merits of any underlying custody dispute. *Morris v. Morris*, 55 F. Supp. 2d 1156, 1160 (D. Colo. 1999) (recognizing that "[p]ursuant to Article 19 of the Convention [this Court has] no power to pass on the merits of custody"); *see also Currier v. Currier*, 845 F. Supp. 916 (D.N.H. 1994) (citing *Friedrich v. Friedrich*, 983 F.2d 1396, 1400 (6th Cir. 1993); *Meredith v. Meredith*, 759 F. Supp. 1432, 1434 (D. Ariz. 1991). The district court's role is not to make traditional custody decisions but to determine in what *jurisdiction* the Children should be physically located so that the proper jurisdiction can make those custody decisions. *Loos v. Manuel*, 651 A.2d 1077, 1079 (N.J. Super. Ct. Ch. Div. 1994).

[4] This Court must apply the substantive law of the Convention. 22 U.S.C. § 9003(d) (2000).

2

involves the wrongful removal and retention of a Child under the age of sixteen (16) from his habitual residence of Mexico to the United States of America.[5]

Venue is proper in this district pursuant to 22 U.S.C. § 9003 (2000) because the Child is currently located in Winston-Salem, in the Middle District of North Carolina, as well as under 28 U.S.C. § 1391(b) (2000), because Respondents currently reside in the Middle District of North Carolina.

## STATEMENT OF FACTS

The Hague Convention applies to cases where a child under the age of sixteen (16) has been removed from his or her habitual residence,[6] in breach of the petitioner's custody rights, which the petitioner had been exercising at the time of the wrongful removal[7] or wrongful retention[8] of the child. These elements are met here.

---

[5] *Toren v. Toren*, 191 F. 3d 23 (1st Cir. 1999).

[6] "Habitual residence" is not defined by a specified period of time. It is the place where the Child has been physically present for an amount of time sufficient for acclimatization and which has a degree of settled purpose from the Child's perspective. In *Monasky v. Taglieri*, 140 S. Ct. 719 (2020), the Supreme Court held that this is a fact-driven inquiry, and that an actual agreement between the parents was not solely determinative. The Court stated, in part, that the decision is "sensitive to the unique circumstances of the case and informed by common sense." *Id. at* 727.

[7] "[T]he removal of a Child from the country of his or her habitual residence is "wrongful" under the Hague Convention if a person in that country is, or would otherwise be, exercising custody rights to the Child under that country's law at the moment of removal." *Friedrich v. Friedrich*, 78 F.3d 1060, 1064 (6th Cir. 1996); *see Prevot v. Prevot*, 59 F. 3d 556, 560 (6th Cir. 1995); Convention, art. 3.

[8] "Wrongful retention" occurs when the retention is in breach of rights of custody attributed to a person under the law of the country in which the Child was habitually resident immediately before the retention; and at the time these rights were actually

3

**A. Prior to his wrongful removal to the United States, Mexico was R.A.G.'s country of habitual residence.**

1. R.A.G. was born on ▆▆▆▆▆▆▆▆, in Mexico to Petitioner and Respondent. *See* Exhibit 2. R.A.G. did not travel outside the country of Mexico until he was wrongfully removed and retained by Respondent.

2. Petitioner and Respondent were married in Mexico and lived there together as husband and wife, until Respondent removed R.A.G. to the United States. *See* Exhibit 3.

3. Petitioner sought a divorce from Respondent and custody of R.A.G. He retained the assistance of counsel for these filings at the time of the removal. Respondent was having an affair and would leave R.A.G. with his paternal grandparents or other family members often while Petitioner was traveling for work.

4. Petitioner's request for divorce and custody was submitted to the Chimalhuacan court on October 5, 2022. The Court ordered Respondent not to leave the state of Mexico until the matter was resolved. Additionally, the Court ordered that a psychologist and social worker were to carry out periodic visits every fifteen days with Respondent and minor child until the time of trial. *See* Exhibit 4.

---

exercised, or would have been so exercised, but for the wrongful retention. Convention, art. 3; *Feder*, 63 F.3d at 225; *Wanninger v. Wanninger*, 850 F. Supp. 78, 80-81 (D. Mass. 1994).

5. Petitioner was aware Respondent was contemplating going to the United States due to the breakdown of the marriage but told Respondent she was not to take the children with her, and that they were to remain in Mexico with Petitioner.

6. On or about November 2, 2022, while Petitioner was traveling for work, Respondent left the marital residence with R.A.G. and fled to the United States.

7. Petitioner was informed Respondent left the home with R.A.G. sometime later from his mother, Lilia Maldonado Ronson, who was present at the marital home on or about November 2, 2022, and witnessed Respondent leaving with R.A.G.

8. Petitioner's older son, Jerko Rey Alva (hereinafter "Jerko"), went with Respondent and R.A.G. When Petitioner attempted to contact Jerko to find out his whereabouts, he would only respond with monosyllables.

9. Petitioner attempted to contact Respondent multiple times; however, Respondent never responded and eventually blocked Petitioner's number.

10. On or about November 28, 2022, Jerko contacted Petitioner over text message and informed Petitioner that he, R.A.G., and the Respondent, were inside the United States.

11. Once Petitioner learned Respondent and R.A.G. were inside the United States, he contacted his attorney in Mexico. Petitioner pursued all lawful avenues of regaining custody of R.A.G., and in February 2023 was informed this was an international matter requiring him to seek assistance from the United States State Department. Petitioner went to the Secretary of Foreign Affairs in Mexico and was able to meet with staff and file the Hague application for the return of R.A.G.

12. Petitioner continued to try to contact Respondent to no avail but made contact with Jerko over the telephone. Jerko informed Petitioner he, R.A.G., and Respondent were living in Winston-Salem, North Carolina.

13. At the time of his wrongful removal in 2022, R.A.G. was a habitual resident of Mexico. Therefore, Petitioner meets the first element of his prima facie case for the return of his son, R.A.G.

**B. The wrongful removal of R.A.G. to the United States is in breach of Petitioner's right of custody under Mexican law.**

14. Under the laws of Mexico, Petitioner has a right to custody and control of the minor child. *See* Exhibit 5. Prior to Respondents' wrongful removal, Respondent was home with R.A.G. while Petitioner worked. Respondent would often leave R.A.G. alone.

15. Petitioner consistently took R.A.G. to his dental and medical appointments. After an incident involving R.A.G. and a family member where R.A.G. was pushed causing him to break his front teeth, Petitioner began taking R.A.G. without Respondent, as she failed to take him to receive proper dental care for his injuries.

16. While Petitioner was traveling for work, the parental grandparents and sister assisted in caring for R.A.G. Petitioner confronted Respondent about her failure to care for R.A.G.; however, Respondent would continue to leave R.A.G. alone at home without adult supervision.

6

17. Petitioner learned Respondent was having an affair and sought the advice of counsel. The Respondent was ordered by the Chimalhuacan Court to remain in the state of Mexico and a social worker was to visit the home every fifteen days to observe Respondent and R.A.G.

18. When Respondent kidnapped R.A.G. and brought him to the United States, Petitioner called multiple times and sent multiple text messages to Respondent on or about November 2, 2022, but Respondent never responded. Petitioner continued to reach out to Respondent through their oldest son Jerko and has remained in contact with him to present. Petitioner remains blocked by Respondent and receives updates as to R.A.G.'s wellbeing through Jerko.

19. Upon information and belief, R.A.G. was enrolled in school in the United States to begin kindergarten in Fall 2023.

20. Prior to removal, Petitioner had enrolled R.A.G. in school at Ignacio Zaragoza in Chimalhaucan, Mexico. *See* Exhibit 6.

21. Petitioner has remained in contact with R.A.G. through his older brother, Jerko since his removal. Petitioner has monthly video calls with R.A.G. where they discuss what he is learning in school, what he is doing in the community, and his overall well-being. At no time prior to or since R.A.G.'s removal has Petitioner acted contrary to that of a custodial parent. Pursuant to Civil Code of the State of Mexico, Article 4.225, Suspension of parental authority, Respondent's parental authority was suspended when, by theft, she removed the Child to the United States without a custody determination by the court. Therefore, Respondents' wrongful removal of

7

the Child to the United States is a breach of Petitioner's custody rights under Mexican law and is in violation of the Hague convention.

## C. At the time of Respondent's wrongful removal of R.A.G. to the United States, Petitioner was actively exercising his custody rights under Mexican Law.

22. At the time of Respondent's wrongful removal of R.A.G. to the United States, Petitioner was actively exercising his custodial rights within the meaning of Articles Three and Five of the Hague Convention and within the meaning of Mexican law. Petitioner was traveling for work at the time of removal and had no knowledge Respondent was intending to leave with their minor child to the United States. Once he learned of their absence, he attempted to contact Respondent repeatedly until he was blocked. Petitioner then continued to contact his older son Jerko to receive updates and to maintain communication with R.A.G. As of the date of this filing, Petitioner speaks with Jerko at least three times a week over text or through phone calls, and once to twice a month over video call. During these video calls, Petitioner speaks with R.A.G. as well.

23. From the time Petitioner learned of Respondent's removal of R.A.G. to the United States, Petitioner has not stopped exercising his custodial rights. He has not acquiesced or relinquished his child to Respondent's care.

24. When Respondent removed R.A.G. to the United States, her parental authority was suspended under Mexican law. There has been no order of any court in Mexico related to R.A.G., and Petitioner remains in Mexico as of the date of this filing.

8

25. Thus, Petitioner meets the final element necessary for his petition to be granted. Petitioner actively exercised his custodial rights at the time of Respondent's wrongful removal of R.A.G. and he continues to exercise those custodial rights despite significant obstacles. Respondent's actions are in violation of Mexican Law and the Hague Convention.

## **CLAIM FOR RELIEF[9]**

Respondent wrongfully removed R.A.G. when Respondent crossed the United States border with R.A.G without the permission of Petitioner and removed him from his habitual residence in Mexico. These actions breached Petitioner's custody rights and violated Mexico's custody laws. Respondent subsequently retained him in Winston-Salem, North Carolina, in willful violation of Petitioner's custodial rights.

Pursuant to the procedures set forth in the Hague Convention, Petitioner formally requested the return of R.A.G. to Mexico by filing an application with the Secretariat of Foreign Affairs in May of 2023. *See* Exhibit 7. Petitioner's application was forwarded to the Central Authority of the United States of the United States Department of State. At the time of Petitioner's application to the Central Authority of the United States of America, Petitioner resided in the contracting state of Mexico.

Pursuant to the aforementioned Mexican law and the Hague Convention, the Child

---

[9] This Court "[i]n furtherance of the objectives of . . . the Convention . . . may take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the Child involved or to prevent the further removal or concealment before the final disposition of the petition." 42 U.S.C. 11604 (2000).

9

was removed and is currently being held illegally in the custody of Respondent. Because he can prove all three elements of a *prima facie* case under the Hague Convention, Petitioner is entitled to an Order directing the prompt return of R.A.G. to his habitual residence of Mexico.

**WHEREFORE**, Petitioner respectfully prays for the following relief:

1. An order commanding Respondent to appear in this Court to show cause why R.A.G. should not be returned immediately to his habitual residence of Mexico;

2. Allow Petitioner the ability to attend hearings using video or other remote participation as Petitioner is unable to obtain a visitor visa to the United States within the expedited time frame of a Hague Convention case;

3. A final judgment in Petitioner's favor directing a prompt return of R.A.G. to his habitual residence of Mexico;

4. An award of Petitioner's legal costs, fees, and expenses incurred to date as required by 22 U.S.C. § 9007 (2000), including transportation expenses, and reserving jurisdiction over further expenses; and

5. Such other and further relief as this Court deems just and proper.

Respectfully submitted, this the 1st day of November, 2024.

*Attorneys for the Petitioner*
Legal Aid of North Carolina
5525 Albemarle Rd.   Suite 100
Charlotte, NC 28212
Phone: (704) 971-2621
Fax: (704) 971-0180

/s/Susan Yanagi
**Susan Joy Yanagi**
North Carolina Bar Number: 60047
susany@legalaidnc.org
**Kelly Barnard-Carroll**
North Carolina Bar Number: 54677
Kellyc2@legalaidnc.org
**Larissa Mañón Mervin**
North Carolina State Bar Number: 43065
Larissam2@legalaidnc.org

11

Case 1:24-cv-00920-TDS-JLW   Document 2   Filed 11/01/24   Page 11 of 13

## VERIFICATION

I, Raymundo Oscar Alva Maldonado, do declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I have read the foregoing document and know the contents thereof and that they are true of my own personal knowledge, except as to those matters and things herein alleged on information and belief, and as to those, I believe them to be true.

Dated: 11-01-2024

*(signature)*

RAYMUNDO OSCAR ALVA MALDONADO
Petitioner

# Signature Certificate

Reference number: PR7SN-AH2AX-ZBZAN-YAO5E

| Signer | Timestamp | Signature |
|---|---|---|
| **Raymundo Oscar Alva Maldonado**<br>Email: rayoalvam27@hotmail.com<br><br>Sent:<br>Viewed:<br>Signed:<br><br>**Recipient Verification:**<br>✓ Email verified | 01 Nov 2024 14:17:26 UTC<br>01 Nov 2024 17:14:16 UTC<br>01 Nov 2024 17:22:56 UTC<br><br><br>01 Nov 2024 17:14:16 UTC | *[signature]*<br><br>IP address: 189.217.212.62 |

Document completed by all parties on:
01 Nov 2024 17:22:56 UTC

Page 1 of 1

**Signed with PandaDoc**

PandaDoc is a document workflow and certified eSignature solution trusted by 50,000+ companies worldwide.